# EXHIBIT

# 4

# American Contractors Indemnity Company

9841 AIRPORT BOULEVARD, 9th FLOOR, LOS ANGELES, CA 90045 (310) 649-0990 FAX (310) 649-0416

Bond No. 160585

## Performance Bond

The language in this document conforms to the language used in American Institute of Architects (AIA) Document A312, December, 1984 edition, Third Printing, March, 1987.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR** (Name and Address):
DiGiovanni Insulation & Refractory Inc
251 Garden
River Ridge La 70123

**SURETY**
American Contractors Indemnity Company
9841 Airport Blvd., 9th Floor
Los Angeles, CA 90045

**OWNER** (Name and Address):
Shane Ho
3813 N Arnoult Rd
Metairie La 70002

**CONSTRUCTION CONTRACT**
Date: 9-13-2002
Amount: $1,781,850.00
Description (Name and Location): Alterations & additions to a two(2) story building to include chinese restaurant & office warehouse, 1601 St Charles Ave, NOLA 70130

**BOND**
Date (Not earlier than Construction Contract Date): October 4, 2002
Amount: $1,781,850.00
Modifications to this Bond: ☒ None ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**
Company: (Corporate Seal)
DiGiovanni Insulation & Refractory Inc
Signature: [signature]
Name and Title: Emile DiGiovanni

**SURETY**
Company: (Corporate Seal)
American Contractors Indemnity Company
Signature: [signature]
Name and Title: Michael S Stuart Attorney-in-Fact

(FOR INFORMATION ONLY — Name, Address and Telephone)
AGENT or BROKER:
Martin Insurance Agency
4700 Orleans Ave
New Orleans, La. 70119

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

CA-T1 ...

EXHIBIT 4

1 The Contracto and the S urety, jointly and severally, bind themselves, their heirs, xecutors, administrators, successors and assigns the Owner for the performance of the Constr tion Contract, which is incorporated herei by refere ce.

2 If the Contract r performs e Construction Contract, the Surety and the C ontractor sl have no obligation under this Bond, except to participate conferences as provided in Subpara raph 3.1.

3 If there is no C wner Defa lt, the Surety's obligation under this Bond shall arise after:

3.1 The Owner I as notified t Contractor and the Surety at its address shown on he cover page that the Owner is conside ring decla ing a Contractor Default and has requested and attempt to arrange a conference with the Contra tor and the urety to be held not later than fifteen days after recei of such notice to discuss methods of perf rming the struction Contract. If the Owner, the Contr ctor and th urety agree, the Contractor shall be allowe I a reaso able time to perform the Construction Co tract, but s ch an agreement shall not waive the Owne 's right, if a , subsequently to declare a Contractor Def ult; and

3.2 The Owner I as declare a Contractor Default and formally termina ed the Co actor's right to complete the contract. Suc Contractor ault shall not be declared earlier than twe ty days af the Contractor and the Surety have rece ved notice provided in Subparagraph 3.1; and

3.3 The Owner as agree to pay the Balance of the Contract Price to he Surety ccordance with the terms of the Construct on Contrac to a contractor selected to perform the C nstruction ntract in accordance with the terms of the c ontract wi he Owner.

4 If the Owner has satisfied t conditions of Paragraph, the Surety shall pr mptly and t the Surety's expense take one of the follow ng actions:

4.1 Arrange for the Contra tor, with consent of the Owner, to perf rm and co plete the Construction Contract; or

4.2 Undertake to erform an complete the Construction Contract itself, thr ugh its ag ts or through independent contractors; or

4.3 Obtain bids r negotiat proposals from qualified contractors acc ptable to t Owner for a contract for performance and ompletion he Construction Contract, arrange for a co tract to be pared for execution by the Owner and t e contract lected with the Owner's concurrence, to b executed wi erformance and payment bonds executed y a qualifi surety equivalent to the bonds issued on he Constr tion Contract, and pay to the Owner the a mount of mages as described in Paragraph 6 in ex ess of the l ance of the Contract Price incurred by the C wner resu g from the Contractor's default; or

4.4 Waive its righ to perform d complete, arrange for completion, or btain a n contractor and with reasonable prom ness unde he circumstances:

4.4.1 After investigation, determine the amount of which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefore to the Owner; or

4.4.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 If the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or nonperformance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law,

**American Contractors Indemnity Company®**
9841 AIRPORT BOULEVARD, 9th FLOOR, LOS ANGELES, CA 90045 (310) 649-0990 FAX (310) 649 0416

Bond No. 160555

# Performance Bond

The language in this document conforms to the language used in American Institute of Architects (AIA) Document A312, December, 1984 edition, Third Printing, March, 1987.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

---

CONTRACTOR (Name and Address):
DiGiovanni Insulation & Refractory Inc
251 Garden
River Ridge La 70123

SURETY
American Contractors Indemnity Company
9841 Airport Blvd., 9th Floor
Los Angeles, CA 90045

OWNER (Name and Address):
Steve Ho
3813 N Arnault Rd
Metairie La 70002

CONSTRUCTION CONTRACT
Date: 9-13-2002
Amount: $1,781,850.00
Description (Name and Location): Alterations & additions to a two(2) story building to include chinese restaurant & office warehouse.
1601 St Charles Ave, NOLA 70130

BOND
Date (Not earlier than Construction Contract Date): October 4, 2002
Amount: $1,781,850.00
Modifications to this Bond: XX None ☐ See Page 3

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
DiGiovanni Insulation & Refractory Inc
Signature: ______________________
Name and Title: Emile DiGiovanni

SURETY
Company: (Corporate Seal)
American Contractors Indemnity Company
Signature: ______________________
Machael S Zwart Attorney-in-Fact

---

(FOR INFORMATION ONLY - Name, Address and Telephone)
AGENT or BROKER:
Martin Insurance Agency
4700 Orleans Ave
New Orleans, La. 70119

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1 The Owner has notified the Contractor and the Surety at its address shown on the cover page that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 If the Owner has satisfied the conditions of Paragraph, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiate proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

4.4.1 After investigation, determine the amount of which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefore to the Owner; or

4.4.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 If the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1,4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or nonperformance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law,

the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit, shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the cover page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12 DEFINITIONS**

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the cover page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

# American Contractors Indemnity Company

9841 Airport Blvd., 9th Floor, Los Angeles, California 90045

44-1659

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint,

Machael S. Zwart

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in an Amount not to exceed $ 1,812,000.00. This Power of Attorney shall expire without further action on January 16, 2003.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th day of December, 1990.

*"RESOLVED that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have the power and authority*

1. *To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*
2. *To remove, at any time, any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the* Company in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by its President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY

AMERICAN CONTRACTORS INDEMNITY CO. INCORPORATED SEPT. 26, 1990 CALIFORNIA

By: Andy Faust
Andy T. Faust, Jr., Corporate President

STATE OF CALIFORNIA §
COUNTY OF LOS ANGELES §

On this 1st day of September, 2000 before me personally came Andy T. Faust, Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

WITNESS my hand and official seal

deborah reese
Deborah Reese, Notary

DEBORAH REESE
Commission # 1205480
Notary Public — California
Los Angeles County
My Comm. Expires Jan 16, 2003

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 4th day of October, 2002.

Bond No. 160555

Agency No. 9337

J. Ferguson
[JAMES H. FER]GUSON, Corporate Secretary

# American Contractors Indemnity Company

9841 AIRPORT BOULEVARD, 9th FLOOR, LOS ANGELES, CA 90045 (310) 649-0990 FAX (310) 649-0416

Bond No: 160255

## Payment Bond

The language in this document conforms to the language used in American Institute of Architects (AIA) Document A312, December, 1984 edition, Third Printing, March, 1987.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR** (Name and Address):
DiGiovanni Insulation & Refractory Inc
251 Garden
River Ridge La 70123

**SURETY**
American Contractors Indemnity Company
9841 Airport Blvd., 9th Floor
Los Angeles, CA 90045

**OWNER** (Name and Address):
Simon Ho
3613 N Arnoult Rd
Metairie La 70002

**CONSTRUCTION CONTRACT**
Date: 1-13-2002
Amount: 11,781,55.00
Description (Name and Location): Alterations & additions to a two(2) story building to include chinese restaurant & office warehouse. 1501 St Charles Ave, NOLA 70130

**BOND**
Date (Not earlier than Construction Contract Date): October 4, 2002
Amount: $1,781,550.00
Modifications to this Bond: ☒ None ☐ See Page 3

**CONTRACTOR AS PRINCIPAL**
Company: (Corporate Seal)
DiGiovanni Insulation & Refractory Inc
Signature:
Name and Title: Emile DiGiovanni

**SURETY**
Company: (Corporate Seal)
American Contractors Indemnity Company
Signature:
Michael S Burst Attorney-In-Fact

(FOR INFORMATION ONLY — Name, Address and Telephone)
AGENT or BROKER:
Martin Insurance Agency
4700 Orleans Ave
New Orleans, La. 70119

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address on the cover page) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address on the cover page) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

4.2.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

4.2.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

4.2.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address on the cover page) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 If the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the cover page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the cover page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the cover page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICAITONS TO THIS BOND ARE AS FOLLOWS:

American Contractors Indemnity Company*
9841 AIRPORT BOULEVARD, 9th FLOOR, LOS ANGELES, CA 90045 (310) 649-0990 FAX (310) 649 0416

Bond No: 160555

# Payment Bond

The language in this document conforms to the language used in American Institute of Architects (AIA) Document A312, December, 1984 edition, Third Printing, March, 1987.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
DiGiovanni Insulation & Refractory Inc
251 Garden
River Ridge La 70123

SURETY
American Contractors Indemnity Company
9841 Airport Blvd., 9th Floor
Los Angeles, CA 90045

OWNER (Name and Address):
Steve Ho
3813 N Arnault Rd
Metairie La 70002

CONSTRUCTION CONTRACT
Date: 9-13-2002
Amount: $1,781,850.00
Description (Name and Location): Alterations & additions to a two(2) story building to include chinese restaurant & office warehouse.
1601 St Charles Ave, NOLA 70130

BOND
Date (Not earlier than Construction Contract Date): October 4, 2002
Amount: $1,781,850.00
Modifications to this Bond: [X] None [ ] See Page 3

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
DiGiovanni Insulation & Refractory Inc
Signature: ____________________
Name and Title: Emile DiGiovanni

SURETY
Company: (Corporate Seal)
American Contractors Indemnity Company
Signature: ____________________
Machael S Zwart Attorney-In-Fact

(FOR INFORMATION ONLY – Name, Address and Telephone)
AGENT or BROKER:
Martin Insurance Agency
4700 Orleans Ave
New Orleans, La. 70119

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall benull and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address on the cover page) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address on the cover page) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

4.2.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

4.2.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

4.2.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address on the cover page) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 If the Claimant has satisfied the conditins of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the cover page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the cover page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineeringservices required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the cover page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICAITONS TO THIS BOND ARE AS FOLLOWS:**

# American Contractors Indemnity Company

9841 Airport Blvd., 9th Floor, Los Angeles, California 90045

44-1659

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint,
Michael S Beart

its true and lawful Attorney(s)-in-Fact with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in an Amount not to exceed $ 1,512,000. ________. This Power of Attorney shall expire without further action on January 16, 2003.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th day of December, 1990.

"*RESOLVED that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have the power and authority*

1. *To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*
2. *To remove, at any time any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signature and facsimile seal shall be valid and binding upon the Company* in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by its President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY

By: [signature]
Andy T. Faust, Jr., Corporate President

STATE OF CALIFORNIA }
COUNTY OF LOS ANGELES }

On this 1st day of September, 2000 before me personally came Andy T. Faust, Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

DEBORAH REESE
Commission # 1203480
Notary Public — California
Los Angeles County
My Comm. Expires Jan 16, 2003

WITNESS my hand and official seal
[signature]
Deborah Reese, Notary

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 4th day of October, 2002.

Bond No. 163525

Agency No. 3337

[signature]
JAMES H. FERGUSON, Corporate Secretary

rev. POA04/20/01

DOCUMENT BACKGROUND IS BLUE - ANY OTHER COLOR IS INVALID

# EXHIBIT

# 5

OMB No. 3245-0007
EXP. DATE: 08-31-2003

U.S. SMALL BUSINESS ADMINISTRATION

See Reverse Side for Public Comment Information

# SURETY BOND GUARANTEE AGREEMENT

AMENDED 990

1. By its authorized signature in Block 16 on the date stated in Block 18, SBA agrees to guarantee the bond(s) described herein as of the time of the issuance, as defined in 13 CFR 115.4, subject to the regulations in 13 CFR 115. SBA guarantees 80 % (not to exceed 90%) of the loss, in consideration, among other things, for $____ on each $1000 of the bond or contract amount, according to surety's own premium base.

2. Surety Name: American Contractor's Indemnity Co.

3. Principal's Trade Name: DiGiovanni Insulation & Refractory Inc.

4. Surety Underwriter's Name: Machael S. Zwart

5. Principal's Trade Address: Street: 251 Garden River Ridge LA 70123
Codes: City, State, Zip and County

6. Principal's Name: Janet DiGiovanni

7. CONTRACT—Description of nature and extent (volume) of work, location, starting date and anticipated completion date: Alterations & Additions to two story building to include restaurant Chinese + office warehouse (start 10/1/02 – 6/30/03) Location 1601 St Charles Ave New Orleans LA 70130

8. Obligee (include address): Steve Ho 3813 N Arnault Rd Metairie LA 70002

9. Estimated Contract Amount: 1,781,850.00

10. Contract: ☐ Bid: Date & Time ☒ Negotiated

11. Bonds Required: ☐ Bid ☒ Payment ☒ Performance

12. Ancillary Bond(s): ☐ Yes ☒ No If yes, Explain:

13. Bond Amount (%): Bid ____ 100% Payment 100% Performance

14. Signature of Surety's Attorney-in-Fact: [signature]
Typed Name:

15. Date: 9-12-02

16. SBA Signature: [signature]
Typed Name: Frank E. Hagan
Disposition: ☒ Approved ☐ Returned/Withdrawn ☐ Declined

17. Title: ADD/Economic Development

18. Date: 09/27/02

Items (19-26) to be completed only for contracts awarded and final bond guarantee requests

19. Date of Contract Award: 09-13-02

20. Contract Amount: $1,780,850.00 + 240,000.00

21. SBA Guarantee Fee From Contractor $ (remitted herewith) 10,692.00 + 1440.

22. Bond Amounts: Bid $ ____ Payment $ 1,781.850.00 Performance $ 1,781.850.00

23. Based on: ☐ Bond Amt ☒ Contract Amt
Premium Charged By Surety: $ 32,073.00 % 1.8 + 4,320.00 = 36,393

24. Surety's Bond Number(s): Payment # 160555 Performance # 160555

25. Project for: ☐ Federal ☐ State ☐ Special District ☒ Private ☐ Local ☐ Other

26. If awarded job was bid, BID SPREAD: Low $ ____ 2nd Low $ ____ 3rd Low $ ____ Highest $ ____

27. SBA's SBG No. w/Suffix: 02-E7211100970-0001

28. Date Received: 09-26-02

16. Received By: Signature: [signature]

SBA Form 990 (5-00) Previous Editions Obsolete

This form was electronically produced by Elite Federal Forms, Inc.

EXHIBIT 5

# EXHIBIT

# 6

F. DiGoua SBA

# Fax Cover Sheet

**www.sba.gov**

U.S. Small Business Administration

SBA

*Your Small Business Resource*

To: Adam Pessin

Organization: HCC Surety Group

Phone: 310-649-0990 Fax: 310-242-4421

Date: 5/4/2007 Time: 7:59:34 AM

From:

Office: Frank Lalumiere

Phone: 202-401-8275 Fax: (202) 481-5755

No. of pages (including this cover sheet) 2

As America's Small Business Resource, the SBA can connect you with a network of services to fit your needs.

We help small businesses:

- Get funding to grow.
- Open doors to contracts.
- Find local resources.
- Recover from disasters.

And more.

**Message:**

CONFIDENTIALITY NOTE: the information contained in this facsimile transmittal sheet and the document(s) that follow are for the exclusive use of the addressees and may contain information protected by the Privacy Act, 5 U.S.C. 552a, or otherwise confidential, privileged, on non-disclosable information. If the recipient of this facsimile is not the addressee or is not the person responsible for delivering this facsimile to the addressee, the recipient may violate the law by reading, photocopying, distributing or otherwise using this facsimile transmission or its contents in any way. If the recipient has received this facsimile transmission in error, call the sending office immediately.



Federal Recycling Program Printed on Recycled Paper

EXHIBIT 6

F. DiGovi SBA

# Fax Cover Sheet

www.sba.gov

U.S. Small Business Administration

SBA

*Your Small Business Resource*

To: Adam Pessin

Organization: HCC Surety Group

Phone: 310-649-0990 Fax: 310-242-4421

Date: 5/4/2007 Time: 7:59:34 AM

From:

Office: Frank Lalumiere

Phone: 202-401-8275 Fax: (202) 481-5755

No. of pages (including this cover sheet) 2

As America's Small Business Resource, the SBA can connect you with a network of services to fit your needs.

We help small businesses:

- Get funding to grow.
- Open doors to contracts.
- Find local resources.
- Recover from disasters.

And more.

**Message:**

**CONFIDENTIALITY NOTE:** the information contained in this facsimile transmittal sheet and the document(s) that follow are for the exclusive use of the addressee and may contain information protected by the Privacy Act, 5 U.S.C. 552a, or otherwise confidential, privileged, on non-disclosable information. If the recipient of this facsimile is not the addressee or is not the person responsible for delivering this facsimile to the addressee, the recipient may violate the law by reading, photocopying, distributing or otherwise using this facsimile transmission or its contents in any way. If the recipient has received this facsimile transmission in error, call the sending office immediately.



Federal Recycling Program Printed on Recycled Paper

U.S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, D.C. 20416

May 4, 2007

Mr. Adam S. Pessin
Executive Vice President
Western Region
HCC Surety Group

Dear Mr. Pessin:

As we discussed during our meeting in Phoenix a few weeks ago, and summarized in my letter to Mr. Frank Lanak on 8 February 2007, a decision on the DiGiovanni claim was deferred pending completion of a review by the Office of the Inspector General. The Inspector General has now finished its review, and SBA has concluded that ACIC acquiesced in the bond amount of $240,000.00 prior to obtaining the approval of SBA as required by 13 CFR §115.19(e). As a result, SBA cannot honor this claim or any other claim arising out of the DiGiovanni default. This constitutes the Agency's final decision on this subject. Please do not hesitate to call me should you wish to discuss this further. Your cooperation during the review of this very significant matter is appreciated.

Sincerely,

Frank J. Lalumiere
Director, Office of Surety Guarantees