**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | ) | |
| Plaintiff, | ) | Case No. 07-374C |
| v. | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint because it fails to state a claim upon which relief can be granted.

American Contractors Indemnity Company ("ACIC") failed to obtain the Small Business Administration's ("SBA") prior written approval, as required by 13 C.F.R. § 115.19(e)(2), for an increase in a Surety Bond Guarantee Agreement between ACIC and SBA. Instead of seeking SBA's approval as of March 24, 2003 – the effective date of ACIC's $240,000 increase – ACIC waited until more than one year later – May 19, 2004 – to seek SBA's approval. Based on ACIC's failure to obtain SBA's prior written approval of this material modification, SBA properly denied ACIC's request for payment, and ACIC has failed to state a breach of contract claim upon which relief can be granted.

In support of this motion, the Government relies upon the Complaint and the following brief.

## QUESTION PRESENTED

1. Whether SBA properly concluded that it was not liable for ACIC's claim pursuant to a bond guarantee because ACIC increased the bond amount by $240,000 without SBA's prior approval, in direct contravention of 13 C.F.R. § 115.19(e).

## STATEMENT OF THE CASE

On September 27, 2002, SBA entered into a written Surety Bond Guarantee Agreement with ACIC in the amount of $1,781,850. Pl. Ex. 1. The agreement indicated that the principal contractor was DiGiovanni Insulation and Refractory, Inc. ("DiGiovanni"), which would be altering a two-story building to include a Chinese restaurant and an office warehouse. The estimated contract amount was $1,781,850. Pl. Ex. 1. SBA agreed to reimburse ACIC eighty percent of any loss or expense suffered by ACIC in connection with the bond. Pl. Ex. 1.

During the performance by DiGiovanni of work on the construction project, the contract price was increased by $240,000. Def. Ex. 1.[1] In a surety rider effective March 24, 2003, ACIC increased the bond amount by $240,000 to reflect the increase in price, for a total contract amount of $2,021,850. The form was signed by ACIC's attorney-in-fact. Def. Ex. 1.

ACIC waited until May 19, 2004 – more than one year after its effective date – to submit the amended Surety Bond Guarantee Agreement reflecting the additional $240,000 bond to SBA for its approval. Def. Ex. 2. ACIC did not inform SBA that the bond had been effective since

---

[1]Although ACIC did not attach copies of the Surety Rider, Def. Ex. 1, or the Surety Bond Guarantee Agreement, Def. Ex. 2, to its complaint – both of which reflect the increased bond – the Court's consideration of these documents does not convert the present motion into a motion for summary judgment because ACIC's complaint references the $240,000 contract price increase, as well as the alleged agreement with SBA to increase the guarantee. Complaint, ¶ 12. See e.g., Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003); Cortec Indus., Inc., 949 F.2d 42, 47 (2nd Cir. 1991).

March 24, 2003. SBA approved the amended bond on June 2, 2004. Def. Ex. 2.

In or around July, 2004, ACIC received notice of claims on the bonds. ACIC subsequently made payments, and on August 12, 2004, HCC Surety Group submitted an initial default/claim notice on behalf of ACIC to SBA for payment pursuant to the guarantee.

On May 4, 2007, after reviewing the circumstances surrounding ACIC's claim, SBA concluded that "ACIC acquiesced in the bond amount of $240,000 prior to obtaining the approval of SBA as required by 13 CFR § 115.19(e). As a result, SBA cannot honor this claim or any claim arising out of the DiGiovanni default." This was SBA's final decision, and this litigation followed.

## ARGUMENT

### I. Standard Of Review

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965-66 (2007), the Supreme Court abrogated Conley v. Gibson, 355 U.S. 41 (1957), and clarified that, in order to survive a motion to dismiss for failure to state a claim, it is not enough for a complaint simply to allege in conclusory fashion, as Conley had suggested, that relief could be granted under some conceivable set of facts. Instead, a complaint must allege "enough factual matter (taken as true) . . . to raise a right to relief above the speculative level," by making allegations "plausibly suggesting (not merely consistent with)" a valid claim. Id.

Pursuant to RCFC 10(c), the exhibits to a complaint become part of the pleadings and may be consulted in resolving a motion to dismiss. Moreover, the Court may consult any documents that are contained or cited in the pleadings, without treating this motion as a summary judgment motion. E.g., Mattes, 323 F.3d at 698 n.4; Cortec, 949 F.2d at 47; see also Southern Cal. Edison Inc. v. United States, 58 Fed. Cl. 313, 321 (2003) (construing contract on

motion to dismiss).

ACIC cannot avoid dismissal by resting upon bare allegations as to the contents of documents cited in its pleadings. "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Cortec, 949 F.2d at 48 (emphasis added); accord Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949-50 (6th Cir. 1990) ("[T]he language of the Plan, and the arguable meanings of its terms, were central to the plaintiffs' complaint, and were part of the pleadings before the district court."); Haskell v. Time, Inc., 857 F. Supp. 1392, 1397-98 (E.D. Cal. 1994).

Statutory construction begins, and typically ends, with the text. The text should be read as a whole and given its plain and ordinary meaning, when the result is not absurd, in light of the evident legislative purposes. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004); Splane v. West, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000). Similarly, contract terms are interpreted as far as possible in accordance with their plain and ordinary meaning, without rendering any part superfluous or producing an absurd result. Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 351 F.2d 972, 975 (1965).

## II. ACIC's Complaint Fails To State A Claim For Breach Of Contract

Because ACIC did not obtain prior written approval for the $240,000 increase in the amount of the bonds, SBA is not liable pursuant to the Guarantee Agreement. Without SBA's prior written approval, SBA had no duty under the Guarantee Agreement and, therefore, did not breach the Guarantee Agreement by denying payment.

The September 27, 2002 Guarantee Agreement states that it is subject to the regulations in 13 C.F.R. § 115. Pl. Ex. 1. Section 115.19 of those regulations, titled "Denial of Liability,"

states that "[i]n addition to equitable and legal defenses and remedies under contract law, the Act and the regulations in this part, SBA is not liable under a Prior Approval or PSB Agreement if any of the circumstances in paragraphs (a) through (h) of this section exist."[2] As one of those circumstances, section 115.19(e)(2) describes an "alteration" as:

> Without obtaining prior written approval from SBA . . . , the Surety agrees to or acquiesces in any material alteration in the terms, conditions, or provisions of the bond, including . . . [i]n the case of a Prior Approval Surety, acquiescing in any alteration to the bond which would increase the bond amount by at least 25% or $50,000.

Thus, in any circumstance where ACIC agrees to a change of the amount of the bond in excess of at least 25 percent or $50,000 without the prior written approval of SBA, SBA has no liability to pay the guarantee.

Here, ACIC offers no evidence that that prior written approval was received for the $240,000 change in the bond amount as of its effective date, March 24, 2003. ACIC merely states "SBA agreed in writing to an amendment of the Guaranty [sic] Contract to increase its guarantee from the original contract and bond amount." Complaint, at ¶ 12. This bare allegation, however, is insufficient and directly contradicted by the Surety Bond Guarantee Agreement – received by SBA on May 19, 2004 – more than one year <u>after</u> its effective date. Def. Ex. 2. Thus, because the ACIC materially altered the bond through increasing it by $240,000 without SBA's prior approval, the SBA properly determined that it was not liable, and ACIC has not articulated a basis for its breach of contract claim.

---

[2]13 C.F.R. § 115.10 defines "Prior Approval Agreement" as "the Surety Bond Guarantee Agreement (SBA Form 990) entered into between a Prior Approval Surety and SBA under which SBA agrees to guarantee a specific bond."

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to RCFC 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Sean M. Dunn
SEAN DUNN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-0883
Fax: (202) 353-7988

Attorneys for Defendant

CHRISTOPHER J. MCCLINTOCK
Office of Litigation
U.S. Small Business Administration
409 Third Street, S.W.
Washington, D.C. 20416

Of Counsel

September 10, 2007

# EXHIBIT 1

American Contractors Indemnity Company®
9841 AIRPORT BLVD., 9 th FLOOR • LOS ANGELES, CA 90045 (310) 649-0990

Date: 3/31/03

SURETY RIDER

OBLIGEE:

Steve Ho
3513 N Arnault Rd
Metairie, LA 70002

To be attached to and form a part of Performance/Payment Bond (Type of Bond), No. 160555, Lic. No. ____________

In favor of Steve Ho (Obligee)

On behalf of DiGiovanni Insulation & Refractory, Inc. (Principal)

For valuable consideration, receipt of which is acknowledged, surety hereby gives its consent to change:
the contract/bond amount

FROM: $1,781,850.00 with approved changed order of $240,000.00 with appropriate change order signed,

TO: $2,021,850.00

To be effective March 24, 2003.

Principal

DiGiovanni Insulation & Refractory, Inc.
251 Garden
River Ridge, LA 70123

AMERICAN CONTRACTORS INDEMNITY COMPANY

Michael S. Zwart Attorney-in-Fact

Producer

Martin Insurance
4700 New Orleans Ave
New Orleans, LA 70119

CA4018 9/02

# EXHIBIT 2

OMB No:3245-0007
EXP. DATE: 08-31-2003
See Reverse Side for Public Comment Information

U.S. SMALL BUSINESS ADMINISTRATION

# SURETY BOND GUARANTEE AGREEMENT

1. By its authorized signature in Block 16 on the date stated in Block 18, SBA agrees to guarantee the bond(s) described herein as of the time of the issuance, as defined in 13 CFR 115.4, subject to the regulations in 13 CFR 115. SBA guarantees 80 % (not to exceed 80%) of the loss, in consideration, among other things, for $____ on each $1000 of the bond or contract amount, according to surety's own premium base.

2. Surety Name: American Contractors Indemnity Company
3. Principal's Trade Name: Digiovanni's Insulation & Refactory, Inc.
4. Surety Underwriter's Name: Macharl S. Zwart
5. Principal's Trade Address: Street 251 Garden; Codes: City, State, Zip and County: River Ridge LA 70123
6. Principal's Name: Janet Digiovanni
7. CONTRACT—Description of nature and extent (volume) of work, location, starting date and anticipated completion date:
Alterations & additions to a (2) two story bldg to include restaurant & office warehouse located at 1601 St. Charles, New Orleans, LA
PROCESSING FOR ADDITION PREMIUM DUE FOR CHANGE ORDER INCREASING BOND/CONTRACT BY $240,000.00
8. Obligee (include address): Steve Ho, 3813 N Arnault Rd, Metairie, LA 70002
9. Estimated Contract Amount: $1,781,850 + $240,000.00 = $2,021,850.00
10. Contract: [ ] Bid: Date & Time [✓] Negotiated
11. Bonds Required: [ ] Bid [✓] Payment [✓] Performance
12. Ancillary Bond(s): [ ] Yes [✓] No If yes, Explain:
13. Bond Amount (%): Bid ___ Payment 100 Performance 100
14. Signature of Surety's Attorney-in-Fact: [signature] Typed Name: Macharl S. Zwart
15. Date: 3/14/04
16. SBA Signature: [signature] Typed Name: ___ Disposition: [✓] Approved [ ] Returned/Withdrawn [ ] Declined
17. Title: SSOL
18. Date: 3/12/04

Items (19-26) to be completed only for contracts awarded and final bond guarantee requests

19. Date of Contract Award: 9/13/02
20. Contract Amount: $1,781,850. + $240,000. = $2,021,850.
21. SBA Guarantee Fee From Contractor $ (remitted herewith) $10,692. + $1,440. = $12,132.
22. Bond Amounts: Bid $ ___ Payment $ 2,021,850. Performance $ 2,021,850.
23. Based on: [ ] Bond Amt [✓] Contract Amt; Premium Charged By Surety: 1.8% rate; $ 32,073. + $4,320. = % $36,393.00
24. Surety's Bond Number(s): Payment # 106555 Performance # 160555
25. Project for: [ ] Federal [ ] State [ ] Special District [X] Private–Steve Ho [ ] Local [ ] Other
26. If awarded job was bid, BID SPREAD: Low $ ___ 2nd Low $ ___ 3rd Low $ ___ Highest $ ___
27. SBA's SBG No. w/Suffix: 02-E721110070-0001
28. Date Received: 5/19/04
16. Received By: Signature: [signature]



This form was electronically produced by Elite Federal Forms, Inc

By the signature of its authorized representative on the reverse side of this form (Blocks 16-18), the U.S. Small Business Administration guarantees the Surety named in Item 2 against loss resulting from the breach by the Principal of the terms of the bond(s) described in Blocks 11, 12, 13, 22 and 24, pursuant and subject to 15 U.S.C. §694a and b, the regulations thereunder (13 CFR Part 115) and the conditions and representations stated below, in reliance on the declarations made on the reverse side hereof, and on the several forms submitted and signed by surety as applicable. This guaranty shall become effective upon the issuance (as defined in said regulations) of the SBA-guaranteed bond by the Surety.

1. Surety represents that it has determined the accuracy and completeness of the information in the Forms submitted by Surety which relate to this agreement, in accordance with generally accepted surety industry underwriting practices. Said Forms are incorporated herein by this reference.

2. Surety shall, conditional on the execution of this guarantee by SBA, if the Surety determines that the Contract price is reasonable and the contract amount does not exceed $1,250,000, become Surety on bid, performance, payment, and other ancillary and coterminous bond(s) required for the award of the Contract. Surety may withdraw its decision to issue such bond(s) if prescribed underwriting conditions are not met or if additional information comes to the attention of Surety of a nature so as to change its underwriting determination, and notice is given to SBA.

3. The terms and conditions of such bond(s) will be in accord with those generally established and accepted by the surety industry for the type of contract for which such bond(s) are required to be furnished by Principal, and Surety represents that such bonds would not be provided for Principal on this Contract without this SBA guarantee.

4. If any suit or claim is filed against Surety upon said bond(s), Surety shall inform SBA of the same within 30 days of receipt of notice thereof in the Surety's home office. Unless SBA decides otherwise, and so notifies Surety, Surety shall take charge of all suits or claims arising under said bond(s) and compromise, settle or defend such suit or claim until so notified. Surety shall take all steps necessary to mitigate any loss resulting from Principal's default. Surety shall not join SBA in any lawsuit to which Surety is a party unless SBA has denied liability or has agreed to such joinder in writing.

5. No employee of SBA has authority to waive, change or alter the terms of this Agreement, unless such alterations are separately attached hereto and both the SBA and Surety's authorized representatives have signed and dated their assent thereto.

6. This Agreement is made exclusively for the benefit of SBA and the Surety, and does not confer any rights or benefits on any other party, such as any right of action against SBA by any person claiming under SBA-guaranteed bonds or otherwise. In the event of the Surety's insolvency, SBA shall not be liable to the receiver or other representative of the surety except for any loss incurred and monies actually paid by such representative under the bonds guaranteed by SBA.

7. If any provision of this Agreement is in conflict with any SBA regulation, such regulation shall prevail in construing or applying this Agreement.

8. Any intentionally false statement or willful misrepresentation in connection with the procurement of the Guarantee or claim for payment pursuant to this Agreement is a violation of Federal law, subject to criminal and civil prosecution under 18 U.S.C. §§ 287, 371, 1001, 15 U.S.C. §645, or 31 U.S.C. §231, carrying fines up to $10,000 and imprisonment of up to five years.

PLEASE NOTE: The estimated burden for completing this form is 10 minutes per response. You are not required to respond to any collection of information unless it displays a currently valid OMB approval number. Comments on the burden should be sent to U.S. Small Business Administration, Chief, AIB, 409 3rd St., S.W., Washington, D.C. 20416 and Desk Officer for the Small Business Administration, Office of Management and Budget, New Executive Office Building, Room 10202, Washington, D.C. 20503. OMB Approval (3245-007). **PLEASE DO NOT SEND FORMS TO OMB.**

**CERTIFICATE OF FILING**

I hereby certify that on this 10th day of September, 2007, a copy of the foregoing "Defendant's Motion To Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Sean M. Dunn