**No. 07-374c**
**(Judge Sweeney)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**AMERICAN CONTRACTORS INDEMNITY COMPANY**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF AMERICAN CONTRACTORS INDEMNITY COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

**DeWitte Thompson**
**Attorney for Plaintiff**
**THOMPSON, SLAGLE & HANNAN, LLC**
**12000 Findley Road**
**Suite 250**
**Duluth, Georgia 30097**
**Telephone: (770) 662-5999**
**Facsimile: (770) 447-6063**

**Electronically Filed:**
**October 29, 2007**

---

# TABLE OF CONTENTS


Table of Authorities........................................ .............. ii

Plaintiff American Contractors Indemnity Company's Response to Defendant's Motion to Dismiss.......................... 1

I. Questions Presented....................................... 1

II. Statement of Facts........................................ 2

III. Argument and Citation of Authorities.................. 5

A. Standard of Review.............................. 5

B. The purpose behind the SBA Guarantee Program is to facilitate the entry of smaller and newer contractors into the construction marketplace ...................................... 7

C. The "evidence" derived from the Complaint does not reflect, as a matter of law, that ACIC is barred from recovery under the SBA Guarantee Agreement...................... 9

i. The effective date is not necessarily The date identified on a bond........... 10

ii. The effective date is not necessarily the date that the bond was signed........ 12

IV. Conclusion............................................... 17

# TABLE OF AUTHORITIES

## I. CASES

All Seasons Construction, Inc. v. United States,
55 Fed. Cl. 175, 180 (2003).

American Cyanamid Co. v. Ring,
286 S.E.2d 1 (Ga. 1982)

Bank of United States v. Donnally,
33U.S. 361 (1834)

BellAtlantic Corp. v. Twombly,
___ U.S. ___ 127 S.Ct. 1955. (May 21, 2007)

Brewer v. National Surety Corp.,
169 F.2d 926, 928 (10th Cir.1948)

Canal and Banking Co. v. Brown,
4 La. Ann. 545 (La. 1849)

Challenger Powerboats, Inc. v. Evans,
No. 4:07-85, 2007 WL 2885346 (E.D. Mo. Sept. 27, 2007)

Coen v. American Surety Co. of New York,
120 F.2d 393, 398 (8th Cir. 1941)

Conley v. Gibson,
355 U.S. 41, 47 (1957)

DeFrene v. Kaiser Steel Corp.,
41 Cal. Rptr 834, 231 Cal. App.2d 452 (1964)

Dunkin' Donuts Franchised Restaurants, LLC v. Strategic Venture Group, Inc.,
No. 07-1923, 2007 WL 2332190 (D.N.J., Aug. 13, 2007)

Flora v. Aetna Casualty & Surety Co.,
207 Cal.App. 2d 376, 378, 24 Cal. Rptr. 305, 307 (Ct. App. 4th District 1962)

Hanauer v. National Surety Co.,
123 A. 863 (Pa. 1924)

Interstate Rock Products, Inc. v. United States,
50 Fed. Cl. 349 (2001)

Jackson v. U. S.,
No. 06-154, 2007 WL 2814721 (W.D. Pa. Sept. 25, 2007)

John McShain, Inc. v. Eagle Indemnity Co.,
23 A.2d 669 (Maryland Ct. App. 1942)

L.B. Smith, Inc. v. U.S.,
145 F. Supp. 216, 223 (Ct. Cl. 1956)

Matthews v. Jeremiah Burns Inc.,
205 Misc. 1006, 129 N.Y.S.2d 841 (1954)

McDevitt & Street Co., Inc. v. Seaaboard Surety Co.,
57 F.3d 1066 (4th Cir. 1995), 1995 WL 365833*5 (4th Cir. 1995)

Mutual Life Ins. Co. of N.Y. v. Hurni Packing Co.,
263 U.S. 167 (1923)

Mutual Life Ins. Co. of New York v. Cohen,
179 U.S. 262. (1900)

Neitzke v. Williams,
490 w.s. 319, (1989)

Pacific Mill & Timber Co. v. Massachusetts Bonding & Ins., Co.,
219 P. 92 (Cal. 1923)

People's Outfitting Co. v. U.S.,
58 F.2d 847, Ct.Cl. 419, modified 2 F.Supp. 847, 77 Ct.Cl. 297

R.W. Rhine, Inc. v. City of Tacoma,
536 P.2d 677 (Wash. Ct. App. Div. 2 1975)

Rachman Bag Co. v. Liberty Mutual Ins. Co.,
46 F.3d 230, 238 (2nd Cir. 1994)

S&B Mining Co. v. Northern Commercial Co.,
813 P.2d 264 Alaska 1982)

Scheuer v. Rhodes,
416 U.S. 232, 236 (1974).

Sehrt v. Tastee Donuts, Inc.,
411 So.2d 625 (La. App. 4th Cir. 1982)

Smith v. Union Bank,
30 U.S. 518 (1831)

St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.,
646 F.2d 1064, 1072 (5th Cir. 1981

Tanco, Inc. v. Houston General Ins. Co.,
555 P.2d 1164 (Col. Ct. App. 1976)

U. S. for the Benefit of Balboa Ins. Co. v. Algernon Blair, Inc.,
795 F.2d 404, 406 (5th Cir. 1986).

U. S. for the Benefit of Westinghouse Electric Supply Co. v. Sisson,
927 F.2d 310 (7th Cir. 1991)

Wenatchee Orchard Syndicate v. Fidelity & Deposit Co.,
155 P.943 (Wash. 1927)

Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.,
413 A.2d 122, 127 (Vt. 1980)

## II. STATUTES AND REGULATIONS

15 U.S.C. § 694
Cal. Civ. Code §§ 2793-794
13 C.F.R. § 115.19(e)
13 C.F.R. § 115.19(f)

## III. TREATISE

63 N.Y. Jur. 2d *Guaranty and Suretyship* Sections 60, 63)

Stearns, The Law of Suretyship,
4th Ed., Section 123, pg. 194)

SBA COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. 07-374c<br>(Judge Sweeney) |

**PLAINTIFF AMERICAN CONTRACTORS INDEMNITY COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff American Contractors Indemnity Company ("ACIC") files this response to Defendant, the United States' ("SBA" or "Defendant") Motion to Dismiss and in support states as follows:

## I. QUESTION PRESENTED

Whether the date typed onto a "bond rider" (which is a document setting forth a modification to an existing bond) conclusively established the date of a "material alteration in the terms . . . of the bond" for purposes of determining whether the plaintiff surety agreed to the alteration prior to obtaining SBA approval, even though the SBA has otherwise acknowledged, in seeking public

comment on the relevant rule change, that it is common in the surety industry that the "effective date" of a bond is often conformed to the date of the contract regardless of which the bond actually becomes enforceable.

## II. STATEMENT OF FACTS

This action was filed by Plaintiff ACIC on July 11, 2007, to recover payments due under a Surety Guarantee Agreement issued by the Small Business Administration ("SBA") in relation to certain contract performance and payment bonds issued by ACIC. On September 10, 2007, the SBA responded by filing a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted (the "Motion"). The Motion is based on 13 C.F.R. § 115.19(e) which provides in pertinent part that the SBA may deny liability on a guarantee agreement if the surety agreed to a material alteration of the guaranteed bond without prior approval of the SBA.[1]

As alleged in the Complaint, on September 27, 2002, SBA entered into a written Surety Bond Guarantee Agreement with ACIC (the "Guarantee Contract"). (*See* Complaint, ¶7, Exhibit 1). Pursuant to the Guarantee Contract, SBA agreed to reimburse ACIC eighty percent (80%) of any loss or expense suffered by ACIC in

---

[1] On October 5, 2007 this Court granted American' Contractor's Unopposed Motion for Enlargement of Time to respond to the Motion.

connection with a bond issued pursuant to the terms of the Guarantee Contract. (*Id.* at ¶ 8).

In 2002, a company named DiGiovanni Insulation and Refractory, Inc. ("DiGiovanni") applied to ACIC for bonds to be issued in connection with a project to construct alterations and additions to a two-story building in New Orleans, Louisiana. (the "Project"). (*Id.* at ¶ 9). As partial consideration for issuing bonds for the Project, ACIC obtained an indemnification agreement from certain persons and an agreement by the Louisiana Bond Assistance Program (the "LBAP") to guarantee any losses that might be incurred by ACIC on such bonds up to a total of $200,000.00. (*Id.* at ¶ 10, Exhibit 2, therein).

On October 4, 2002, in consideration of, and in legal and detrimental reliance upon the Guarantee Contract, ACIC issued payment and performance bonds numbers 160555 (the "Bonds") in connection with the Project. (*Id.* at ¶ 11) with a penal amount of $1,781,850.00. (*Id.*, Exhibit 4, therein). The Bonds were covered by the SBA's Guarantee Agreement with ACIC.

During the performance by DiGiovanni of work on the Project, DiGiovanni and the owner of the Project agreed to a change in the contract price, pursuant to which the contract price was increased the contract price by $240,000.00, from $1,781,850 to $2,021,850. (*Id.* at ¶ 12, Exhibit 5, therein). In consideration of

payment of an additional fee, the SBA agreed in writing to an amendment of the Guarantee Contract to cover a change in the penal amount of the Bonds corresponding to the increased contract amount. (*Id.*) (*See also* Exhibit 2 to Defendant's Motion to Dismiss).

In or around July, 2004, ACIC received notice of claims on the Bonds. (*Id.* at ¶ 13). These claims were investigated and settled with ACIC paying $204,650.67 under the payment bond and $650,000.00 under the performance bond. (*Id* at ¶¶ 13-14). ACIC also incurred approximately $103,018.14 in expenses and attorney fees investigating and defending the claims on the Bonds. (*Id.* at ¶ 16).

ACIC subsequently recovered $200,000.00 from the LBAP to partially offset the losses and expenses incurred by ACIC in connection with the Bonds. (*Id.* at ¶ 17) ACIC applied the recovery against its losses such that SBA received the benefit of the recovery. (*Id.*) In compliance with the SBA regulations, ACIC timely notified SBA of the claims that had been asserted against the Bonds and otherwise complied with any notice or reporting requirements of the SBA. (*Id.* at ¶¶ 18-19). ACIC subsequently submitted to the SBA numerous requests for payment of $619,548.51, with supporting documentation. (*Id.* at ¶¶ 18, 19) However, the SBA never made any payment to ACIC in connection with the

Bonds. By letter dated May 4, 2007, SBA declared, as a final decision of the agency, that it would not "honor this claim [by ACIC] or any other claim arising out of the DiGiovanni default." (*Id.*, Exhibit 6, therein). The basis for its refusal was that the SBA had concluded that "ACIC acquiesced in the bond amount of $240,000 prior to obtaining the approval of SBA as required by 13 CFR § 115.19(e)." (*Id.*) This lawsuit ensued.

## III. ARGUMENT AND CITATION OF AUTHORITIES

### A. Standard of Review

A complaint will not be dismissed if it "set[s] forth fair notice of what the claim is and the grounds upon which it rests," or, otherwise, alleges "enough facts to state a claim to relief that is plausible on its face." *See BellAtlantic Corp. v. Twombly*, ___U.S.___, 127 S. Ct. 1955, (May 21, 2007)(abrogating the standard in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *See also*, *Dunkin' Donuts Franchised Restaurants, LLC v. Strategic Venture Group, Inc.*, No. 07-1923, 2007 WL 2332190 (D.N.J. Aug. 13, 2007); *Jackson v. U.S.*, No. 06-154, 2007 WL 2814721 (W.D. Pa. Sept. 27, 2007). "The Federal Rules do not require great precision in pleadings." *Challenger Powerboats,*

*Inc. v. Evans*, No. 4:07-85, 2007 WL 2885346 at 3 (E.D. Mo. Sept. 27, 2007). Rule 8(a) of the RCFC and the Federal Rules of Civil Procedure require that a pleading must set forth a claim for relief which contains a short and plain statement of the claims showing that the pleader is entitled to relief. *Id.*

In ruling on a Motion to Dismiss the court does not rule on the ultimate merits of Plaintiff's claim, but only the sufficiency of the pleadings. *Dunkin' Donuts*, 2007 WL 233190 at 3. The court must review the complaint, and exhibits therein, in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true, even if doubtful. *See Jackson,* 2007 WL 214721 (*citing Neitzke v. Williams*, 490 U.S. 319, (1989); *Challenger Powerboats,* 2007 WL 2885346 *2. The issue to be addressed by the court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of its claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974); *See Dunkin' Donuts*, 2007 WL 2332190 at 1.

A well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely" or if it "strikes a savvy judge that actual proof of those facts is improbable." *BellAtlantic*, __U.S.___, 127 S.Ct. at 1965 (*quoting Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)). *See Challenger Powerboats,* 2007 WL 2885346 at 2. The new standard of review delineated by the SBA Supreme Court

in *BellAtlantic* "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *BellAtlantic*, 127 S. Ct. at 1965, 1974. *See Challenger Powerboats,* 2007 WL 2885346 at 2. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

**B. The purpose behind the SBA Guarantee Program is to facilitate the entry of smaller and newer contractors into the construction marketplace.**

In the Complaint, ACIC sued the SBA for damages arising from a breach of a Surety Bond Guarantee Agreement by the SBA. ACIC alleged that the SBA guaranteed the payment of certain bonds to ACIC pursuant to the SBA Surety Bond Guarantee Program. The SBA responded to the Complaint by requesting this Court to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. Based on an erroneous understanding of its own regulation – and possibly of the nature of the industry that it is dealing with – SBA's Motion incorporated an artificially simplistic assessment of ACIC's claim in an effort to justify depriving ACIC of the opportunity to present its case. ACIC claim is valid, and presents justicable issue and therefore, the SBA's Motion should be denied.

The Surety Bond Guarantee (SBG) program administered by the SBA is intended to impact the construction industry, primarily at the level of commercial

(as opposed to residential) building construction, by helping smaller and newer contractors obtain bonds so that they have a better chance at competing with larger and more established companies. In the construction industry, many, if not most construction projects involve requirements that the general contractor, and often the subcontractors as well, obtain surety bonds providing assurance that the work required by the bonded contract will be completed and that supplies, laborers and lower-tier subcontractors will be paid.

Commercial surety companies in the business of issuing such bonds look to their customers –the principals on the bonds, to indemnify the surety against any loss incurred on the bond. Accordingly, a surety will ordinarily undertake a credit investigation of an applicant for a bond, and will issue a bond only for those applicants who appear to be able both to complete the work and, if necessary, pay any losses arising from any default or disputes affecting the bonded contract. Consequently smaller companies with limited financial resources are often excluded from standard bond markets. The SBG surety bond guarantee program is intended to allow such smaller (and often newer) enterprises to obtain bonds so that they can compete with more established companies. *U.S. for the Benefit of Balboa Ins. Co. v. Algernon Blair, Inc.*, 795 F.2d 404, 406 (5th Cir. 1986). *See* 15 U.S.C. § 694. Surety companies are encouraged to issue bonds to contractors who

are somewhat more likely to default-and much less likely to be able to indemnify the surety following a default – by the SBA undertaking to bear much of the risk through an agreement to reimburse the surety for a substantial proportion of its losses. Consistent with that purpose, ACIC would not have issued the Bonds in question without the protection of the SBA guarantee. Of course, SBA's mission purpose of facilitating the entry of smaller and newer contractors into the marketplace is accomplished through regulations that include specified circumstances in which the SBA may deny liability on an existing guarantee.

**C. The "evidence" derived from the Complaint does not reflect, as a matter of law, that ACIC is barred from recovery under the SBA Guarantee Agreement.**

In this case, the SBA asserts that it is relieved from payment of the claim, pursuant to 13 CFR § 115.19(e)(2), because ACIC allegedly approved, or otherwise agreed to, an increase in the penal limit of the Bonds before receiving the SBA's written approval for such an increase. Pursuant to 13 CFR § 115.19(e)(2), the SBA can deny liability if, under a Prior Approval Agreement, and without "prior written approval from the SBA," "the Surety agrees to or acquiesces in any material alternation in the terms, conditions, or provisions of the bond," not limited to "acquiescing in any alteration to the bond which would increase the bond amount by at least 25% or $50,000."

The SBA claims that two documents prove, **as a matter of law, <u>based on the pleadings alone</u>,** that ACIC executed a Surety Rider increasing the penal amount of the Bonds before it obtained express permission from the SBA. The first document is a copy of the Surety Rider submitted by ACIC in its Complaint as Exhibit 5 and Defendant's Exhibit 1 to Motion. The Surety Rider states that the increase in the penal limit of the Bonds, which is over 25% or $50,000 the bond amount, is "to be effective March 24, 2003."

The second document is a typed and dated Amended SBA Guarantee Agreement for these Bonds, submitted by the SBA. The Amended SBA Guarantee Agreement reflects that it was approved by the SBA on June 2, 2004. The SBA claims that the "clear meaning" of these documents is that ACIC "materially altered the bond through increasing it by $240,000 without SBA's prior approval." *See* Motion pg. 5. On the contrary, the SBA is asking this Court to make assumptions not reflected in the Complaint, or the referenced exhibits. The date that the Surety Rider actually took effect to increase the penal limit of the Bond, if at all, cannot be determined from the face of the Surety Rider.

**i. The effective date is not necessarily the date identified on a bond.**

The SBA asks this Court to assume that the "effective date" identified in the Surety Rider is the date that ACIC raised the penal limit on the Bonds so as to

render that increase an enforceable alteration of the Bonds. However, the SBA's argument is not supported by the law, as well as the evidence, not the intention of the parties, and is even contradicted by the comments to the Final Rule adopting 13 CFR § 115.19.

In the process of soliciting public comment on the regulation relied upon by the SBA in this case, the SBA expressly acknowledged that, due to common practice in the industry of dating bonds to conform to bonded contracts, bonds may often show an "effective date" that is earlier than the actual execution date for the bond. *See* 61 FR 32266-01, 1996 WL 34181 * 6-7 (F.R. January 31)(discussing proposed § 115.19(f), timeliness"). In that regard, the SBA recognized that an obligee on a bond often expects the bond to be dated the same day as the contract, regardless of the actual execution date of the bond. *Id.* The SBA confirmed in its comments, that it would remain bound by its Guarantee to a bond with a stated effective date earlier than the bond's execution date, as long the bond was executed no earlier than the date of SBA's guarantee. *Id.* The point is that the SBA will not issue a guarantee where the surety is already legally bound on the bond obligation because, in the SBA's view, if the bond is already enforceable against the surety, then it necessarily follows that the contractor was able to obtain bonding without the participation of the SBA. *Id.* It is not necessary to agree with the SBA's

reasoning to see that the same rationale applies to increases in the penal bond amount.

In the comments to the aforementioned Final Rule, the SBA recognized that contract amounts often increase by change order after a bond is issued. Ordinarily, a surety cannot object to, or prevent, the parties to the bonded contract from making changes, and sureties are not always notified of such changes. *Id.* As long as the surety is not, by its own acts, actually bound by a material alteration in the bond (as defined in the regulation) prior to the approval of the SBA, then both the policy and the letter of the regulation provide no cause for the SBA to deny the surety's subsequent claim under the guarantee agreement.

**ii. The effective date is not necessarily the date that the bond was signed.**

The SBA also argues that the "effective date" stated on the Surety Rider is the date upon which the penal limit on the bond was increased because the Surety Rider was signed by an ACIC' attorney in fact. A power of attorney attached to a signed bond is proof of the authority of the signatory to bind the surety. *See Interstate Rock Products, Inc. v. U.S.*, 50 Fed. Cl. at 359-60 (2001); *All Seasons Construction, Inc. v. U.S.*, 55 Fed. Cl. 175, 180 (2003). The fact that the Surety Rider stated that it was "to be effective on March 24, 2003" did not create any

obligation upon ACIC until the bond was signed, with a power of attorney **and also delivered**.

A surety is one who assumes secondary liability for the performance of an obligation. *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*, 646 F.2d 1064, 1072 (5th Cir. 1981). Such an obligation is only enforceable if it is in writing. "It is a general rule of the law of suretyship that no one incurs a liability to pay a debt or to perform a duty for another unless he expressly agrees to be so bound, for the law does not create relationships of this character by mere implication." *See Interstate Rock Products, Inc. v. U.S.*, 50 Fed. Cl. 349 (2001). *See also,* Cal. Civ. Code Sections 2793-2794 (suretyship obligation must be in writing).

Furthermore, in almost all jurisdictions, including Louisiana and California, a surety is not liable on a bond until the bond is, not only signed by the surety, but also delivered to and accepted by obligee. *See Canal and Banking Co. v. Brown,* 4 La. Ann. 545 (La. 1849); *Flora v. Aetna Casualty & Surety Co.*, 207 Cal.App. 2d 376, 378, 24 Cal. Rptr. 305, 307 (Ct. App. 4th District 1962)("Delivery is essential for valid execution of the bond."*); Pacific Mill & Timber Co. v. Massachusetts Bonding & Ins. Co.*, 219 P. 972 (Cal. 1923); *John McShain, Inc. v. Eagle Indemnity Co.*, 23 A.2d 669 (Md. Ct. App. 1942)(*citing* Stearns, *The Law of*

*Suretyship*, 4th Ed., Section 123, pg. 194); *Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.*, 413 A.2d 122, 127 (Vt. 1980)("Delivery is essential to validity of a bond."); *Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 238 (2nd Cir. 1994)("A surety's guarantee is not effective until it is delivered to and accepted by the obligee.")(*citing* 63 N.Y. Jur. 2d *Guarantee and Suretyship* Sections 60, 63); *Coen v. American Surety Co. of New York*, 120 F.2d 393, 398 (8th Cir. 1941); *McDevitt & Street Co., Inc. v. Seaboard Surety Co.*, 57 F.3d 1066, 1995 WL 365833 * 5 (4th Cir. 1995); *Hanauer v. National Surety Co.*, 123 A. 863 (Pa. 1924).[2]

**The sureties obligation to the obligee upon a principal's default begins from the date that the bond was delivered and accepted, regardless of an earlier "effective date."** *See U.S. for the Benefit of Westinghouse Electric Supply Co. v. Sisson*, 927 F.2d 310 (7th Cir. 1991); *Wenatchee Orchard Syndicate v.*

---

[2] The bonds in this case were issued by a surety, located in California for a project in Louisiana. The Federal courts follow the rule that the nature, validity and interpretation of contracts are to be governed by the law of the state where the contracts are made or are to be performed. *See L.B. Smith, Inc. v. U.S.*, 145 F. Supp. 216, 223 (Ct. Cl. 1956)(*citing People's Outfitting Co. v. U.S.*, 58 F.2d 847, 74 Ct.Cl. 419, *modified* 2 F. Supp. 847, 77 Ct.Cl. 297; *Mutual Life Ins. Co. of New York v. Cohen*, 179 U.S. 262 (1900);*Bank of U.S. v. Donnally*, 33 U.S. 361 (1834); *Smith v. Union Bank*, 30 U.S. 518 (1831)). Whether the bond was to be performed in California or Louisiana, the law governing suretyship relevant to the issue at hand is similar in either State.

*Fidelity & Deposit Co.* 255 P. 943 (Wash. 1927). In *Wenatchee*, the bond at issue was executed and approved after the stated effective date on the bond. The Supreme Court of Washington held that no liability accrued for any damages that accrued prior to the execution and acceptance of the bond, even though the bond recited that the term of office of the public official bonded began at a date prior to that on which damages arose.

In so holding the Court stated the general rule that, unless a bond is retroactive by its express terms, it binds a surety with respect to future transactions only, and the surety is not liable for any default in the condition of the bond which had already occurred when the bond took effect. However, the parties to a bond may indeed expressly agree to give a bond a retroactive effect. *See American Cyanamid Co. v. Ring,* 286 S.E.2d 1 (Ga. 1982); *DeFrene v. Kaiser Steel Corp.*, 41 Cal. Rptr 834, 231 Cal. App.2d 452 (1964); *Sehrt v. Tastee Donuts, Inc.*, 411 So.2d 625 (La. App. 4th Cir. 1982); *Matthews v. Jeremiah Burns Inc.*, 205 Misc. 1006, 129 N.Y.S.2d 841 (1954); *Mutual Life Ins. Co. of N.Y. v. Hurni Packing Co.*, 263 U.S. 167, (1923) ("it was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue"); *Brewer v. National Surety Corp.*, 169 F.2d 926, 928 (10th Cir. 1948) ("parties [may] agree that a written contract shall take effect as of a date earlier than that on which it was

executed, and when this is done, the parties will be bound by such agreement"); *Jeremiah Burns, Inc*., 205 Misc. 1006, 129 N.Y.S.2d 841 (Sup.Ct.1954) (contract signed three years after effective date given retroactive effect when parties specified that contract was "as of" the effective date); *S&B Mining Co. v. Northern Commercial Co.,* 813 P.2d 264 (Alaska 1982) (date contract was signed was date of execution and effective date was retroactive).

**Whether a bond has been delivered is a question of intent.** *See Flora,* 207 Cal. App. 2d at 307, 24 Cal. Rptr at 379; *Tanco, Inc. v. Houston General Ins. Co*., 555 P.2d 1164 (Col. Ct. App. 1976); *R.W. Rhine, Inc. v. City of Tacoma,* 536 P.2d 677 (Wash. Ct. App. Div. 2 1975). The intent may be inferred from fact and circumstances of a case. *Id.* In that regard, the issue of delivery is a factual one subject to discovery or a motion for summary judgment.

In this case, the power of attorney, attached to the Surety Rider, was executed on May 25, 2004, over a year past the stated "effective date" on the Surety Rider. Therefore, the Surety Rider could not have been legally effective until, at the very least, May 25, 2004. Furthermore, there is no allegation in the Complaint or any exhibits or other documents upon which the Complaint was based that reflects that the Surety Rider was ever delivered to the Obligee.

## IV. CONCLUSION

In this case whether the effective date was intended to be retroactive or not is irrelevant as the Surety Rider was ineffective until it was delivered to the obligee.[3] The SBA has not produced any evidence or any argument that is appropriate to support a motion to dismiss that shows, as a matter of law, ACIC increased the penal bond amount before SBA approval, if increased at all, or is otherwise barred from recovery for breach of contract. The correct course is for this case to proceed to discovery. The Motion should be denied.

Respectfully submitted this 29th day of October, 2007.

THOMPSON, SLAGLE & HANNAN, LLC

*/s/DeWitte Thompson*
DeWitte Thompson
Georgia Bar No. 707688
Attorney for Plaintiff

12000 Findley Road
Suite 250
Duluth, GA 30097
Telephone No. (770) 662-5999
Facsimile: No. (770) 447-6063

---

[3] The evidence submitted with the Complaint and by the SBA reflects that the SBA was aware of the retroactive effect of increase in the penal amount as the documents submitted to the SBA when seeking authorization for the increase, included the change order, *See* Exhibit 5 to the Complaint, and the Guarantee Agreement, executed by the SBA, which was submitted by the SBA as Exhibit 2 to the Motion which expressly states that the increase was retroactive to the origin of the contract, September 13, 2002. *See* Section 19 of Exhibit 2.

**CERTIFICATE OF FILING**

I hereby certify that on this 29th day of October, 2007, a copy of the foregoing **PLAINTIFF ACIC INDEMNITY COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Sean M. Dunn
Commercial Litigation Branch-Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

**THOMPSON, SLAGLE & HANNAN, LLC**

*/s/DeWitte Thompson*
DeWitte Thompson
Georgia Bar No. 707688
Attorney for Plaintiff

12000 Findley Road
Suite 250
Duluth, GA 30097
Telephone No. (770) 662-5999
Facsimile: No. (770) 447-6063