# In the United States Court of Federal Claims

No. 07-374 C
(Filed: April 29, 2008)

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, Plaintiff, | * | RCFC 12(b)(6); Failure to State a Claim Upon Which Relief Can Be Granted; Twombly; Matters Outside the Pleadings; Conversion of RCFC 12(b)(6) Motion; Denial of Liability; Surety Bond; 13 C.F.R. § 115.19. |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

DeWitte Thompson, Duluth, Georgia, for plaintiff.

Sean Michael Dunn, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is defendant's Motion to Dismiss. Defendant argues that plaintiff, American Contractors Indemnity Company ("ACIC"), fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") because it did not obtain prior written approval from the Small Business Administration ("SBA") for an increase in a Surety Bond Guarantee Agreement ("Guarantee Agreement") between plaintiff and the SBA, as required by the applicable regulation. Def.'s Mot. Dismiss ("Def.'s Mot.") 1. The court deems oral argument unnecessary. For the reasons set forth below, defendant's motion is granted.

## I. FACTUAL BACKGROUND[1]

Plaintiff engages in the business of issuing performance and payment contract bonds as surety for the performance of construction contracts. Compl. ¶ 1. In 2002, DiGiovanni

---

[1] The facts are derived from the Complaint ("Compl."), exhibits accompanying the Complaint ("Pl.'s Ex."), exhibits accompanying defendant's motion ("Def.'s Ex."), and plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Resp."). For purposes of this motion to dismiss, the facts alleged by plaintiff are assumed to be true.

Insulation and Refractory, Inc. ("DiGiovanni"), the principal contractor hired to perform alterations and construct additions to a two-story building located in New Orleans, Louisiana ("the project"), applied to plaintiff for bonds to be issued in connection with the project. Id. ¶ 9. On August 20, 2002, DiGiovanni, as principal obligor and as a corporate indemnitor, along with Janet DiGiovanni and Emile DiGiovanni as individual indemnitors (collectively, "the indemnitors"), executed and delivered to plaintiff a General Indemnity Agreement as partial consideration for issuing bonds for the project. Id. ¶ 10; see also Pl.'s Ex. 2 (containing the general indemnity agreement signed by the parties). On September 13, 2002, DiGiovanni and the project owner, Steve Ho, executed a construction contract for the project in the amount of $1,781,850.00. Compl. ¶ 11; see also Pl.'s Ex. 3 (containing the September 13, 2002 construction contract).

On September 27, 2002, the SBA entered into the Guarantee Agreement with plaintiff.[2] Compl. ¶ 7; see also Pl.'s Ex. 1 (containing the September 27, 2002 Guarantee Agreement). The Guarantee Agreement indicated that the SBA agreed to reimburse plaintiff 80 percent of any loss or expense suffered by plaintiff in connection with a bond issued pursuant to the terms of the Guarantee Agreement. Compl. ¶ 8; Pl.'s Ex. 1. It also stated that the SBA would guarantee the bonds subject to the regulations found at 13 C.F.R. § 115 (2002).[3] Pl.'s Ex. 1. On October 4, 2002, plaintiff executed payment and performance bonds in the amount of $1,781,850.00 in connection with the project. Compl. ¶ 11; see also Pl.'s Ex. 4 (containing both the payment and performance bonds). The penal amount of each bond was $1,781,850.00. Compl. ¶ 11; Pl.'s Ex. 4. "As additional mitigation of the anticipated exposure on the bonds requested by DiGiovanni," plaintiff also entered into an agreement with the Louisiana Bond Assistance Program ("LBAP") to guarantee any losses, up to $200,000.00, that plaintiff might incur on the bonds. Compl. ¶ 10.

During the course of work on the project, DiGiovanni and the project owner agreed to a $240,000.00 increase in the contract price. Compl. ¶ 12; see also Pl.'s Ex. 5 (containing handwritten modifications to the original Guarantee Agreement reflecting amendments); Def.'s Ex. 1 (containing the surety rider, "[t]o be effective March 24, 2003," indicating an "approved changed order of $240,000.00"). Plaintiff submitted the amended Guarantee Agreement to the

---

[2] Plaintiff's attorney-in-fact signed the Guarantee Agreement on September 12, 2002. Pl.'s Ex. 1. Plaintiff then submitted the Guarantee Agreement to the SBA on September 26, 2002, and the SBA approved it on September 27, 2002. Id.

[3] The original Guarantee Agreement was completed utilizing SBA Form 990. See Pl.'s Ex. 5 (containing handwritten amendments to the original Guarantee Agreement attached as plaintiff's Exhibit 1). As such, the Guarantee Agreement at issue in this case is a Prior Approval Agreement, which is defined as "the Surety Bond Guarantee Agreement (SBA Form 990) entered into between a Prior Approval Surety and [the] SBA under which [the] SBA agrees to guarantee a specific bond." 13 C.F.R. § 115.10. As a Prior Approval Surety, plaintiff "must [have] obtain[ed the] SBA's prior approval on each guarantee and . . . ha[ve] entered into one or more Prior Approval Agreements with [the] SBA." Id.

SBA on May 19, 2004. Def.'s Ex. 2. The SBA agreed, in consideration of payment of an additional fee, to an amendment of the Guarantee Agreement to increase its guarantee from the original contract and bond amount of $1,781,850.00 to $2,021,850.00. Compl. ¶ 12; Def.'s Ex. 2 (containing the amended Guarantee Agreement reflecting an additional $240,000.00 to the contract amount). In accordance with applicable regulations, the SBA reduced its reimbursement obligation from 80 percent to 79.14 percent of any loss suffered by plaintiff on the bonds. Compl. ¶ 12; Def.'s Ex. 2. The SBA approved the amended Guarantee Agreement on June 2, 2004.[4] Def.'s Ex. 2.

In or about July 2004, plaintiff received notice of claims on the bonds. Compl. ¶ 13. Plaintiff investigated and resolved claims on the payment bond via settlement and payments totaling $204,650.67. Id. DiGiovanni was subsequently declared in default by the project owner and was terminated from performing the contract. Id. ¶ 14. Plaintiff also investigated a claim on the performance bond, which it ultimately resolved via settlement and payments totaling $650,000.00. Id. Plaintiff incurred over $100,000.00 in expenses and attorneys fees in connection with investigating and defending the claims on the bonds, id. ¶ 16, and recovered $200,000.00 from the LBAP, id. ¶ 17, in order to "partially offset the losses and expenses incurred . . . in connection with the Bonds," Pl.'s Resp. 4; see also Compl. ¶ 17 (stating that plaintiff applied the recovery from the LBAP "against its losses such that the SBA received the benefit of the recovery"). Plaintiff is currently pursuing litigation against both the project architect and the indemnitors.[5] Compl. ¶¶ 15, 20.

Plaintiff "timely notified [the] SBA of the claims and provided multiple reports on the status of the claims and payments made therein in full compliance with 13 C.F.R. § 115.35(a) and (b) and all other applicable regulations and standards of performance under the Guarantee Contract."[6] Id. ¶ 18. It submitted, pursuant to 13 C.F.R. § 115.35(c), "numerous requests for payment by the SBA of $619,548.51, with supporting documentation."[7] Id. ¶ 19. In its final decision issued on May 4, 2007, the SBA concluded that, because plaintiff "acquiesced in the bond amount of $240,000.00 prior to obtaining the approval of [the] SBA as required by 13 CFR § 115.91(e)[,] . . . [the] SBA cannot honor this claim or any other claim arising out of the DiGiovanni default." Pl.'s Ex. 6; Compl. ¶ 19. Plaintiff alleges that the SBA's refusal to pay

[4] The amended Guarantee Agreement was also completed utilizing SBA Form 990. See Def.'s Ex. 2; supra note 3.

[5] The project owner, pursuant to a settlement agreement with plaintiff, assigned to plaintiff any right of action against the project architect. Compl. ¶ 15.

[6] Plaintiff did not indicate any dates upon which it submitted notifications and reports to the SBA or attach copies of these notifications and reports as exhibits to its Complaint.

[7] Plaintiff did not indicate any dates upon which it submitted its requests for payment or attach copies of these submissions as exhibits to its Complaint.

under the Guarantee Agreement constitutes a breach of contract for which the SBA is liable and seeks partial reimbursement of payments it made to satisfy claims against the bonds plus attorneys fees and costs incurred related to the investigation and defense of litigation of the claims made on the bonds. Compl. Prayer for Relief ¶¶ 1-2.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

The Tucker Act, 28 U.S.C. § 1491 (2000), confers upon the United States Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, the statute "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citing United States v. Mitchell, 463 U.S. 206, 216 (1983)). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994). In this case, plaintiff asserts jurisdiction on the basis of the Guarantee Agreement into which it entered with the SBA, which is authorized to enter into agreements with sureties pursuant to 15 U.S.C. § 694b (2000). Compl. ¶ 3. Because plaintiff's claim rests upon an express contract, the court has jurisdiction in this case.

### B. Motion to Dismiss Pursuant to RCFC 12(b)(6)

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The United States Supreme Court ("Supreme Court") recently clarified the standard with respect to the degree of specificity with which a plaintiff must plead facts sufficient to survive a Rule 12(b)(6) motion. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007). It stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation & quotation marks omitted). The Supreme Court added that, while a complaint need not contain "detailed" factual allegations, those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."[8] Id. (citation & footnote omitted). Thus, in reviewing an RCFC 12(b)(6) motion, this court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (citations & quotation marks omitted). A failure to allege a cause of action upon which relief can be granted warrants a judgment on the merits rather than a dismissal for want of jurisdiction. Litecubes, LLC v. N. Light Prods., Inc., No. 2006-1646, 2008 WL 1848659, at *4 (Fed. Cir. Apr. 28, 2008).

Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding a motion to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If matters outside the pleadings are presented to and not excluded by the court on a motion to dismiss for failure to state a claim upon which relief can be granted, then "the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56 . . . ." RCFC 12(b). Like its counterpart, current Rule 12(d) and former Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP" or "Federal Rules"),[9] RCFC 12(b) "is mandatory; consequently, if documents outside the pleadings are placed before a district court, and not excluded, the court must convert the defendant's 12(b)(6) motion to one for summary judgment and afford the plaintiff an opportunity to submit additional evidentiary material of his or her own." Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (interpreting FRCP 12(b)); District of Columbia v. United States, 67 Fed. Cl. 292, 301 (2005) ("Once the court

---

[8] In so holding, the Supreme Court determined that the "no set of facts" language set forth in Conley v. Gibson, 355 U.S. 41, 45 (1957), "has earned its retirement." Twombly, 127 S. Ct. at 1969.

[9] Interpretation of RCFC 12(b) "will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." RCFC rules committee note (2002); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of an identical federal rule "informs the Court's analysis" of the corresponding RCFC). The Federal Rules were amended on December 1, 2007, "as part of the general restyling of the Civil Rules." FRCP 12 advisory committee's note (2007 Amendment). Although any changes to FRCP 12(b) were "intended to be stylistic only," id., the court notes that the following language, which previously appeared in subsection (b), has been moved to subsection (d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FRCP 12(d). Because RCFC 12(b) is identical to the former FRCP 12(b) and any changes to the Federal Rules were stylistic only, the court relies upon authorities construing the previous version of FRCP 12(b).

decides to accept extra-pleading material, it must convert the 12(b)(6) motion into a Rule 56 motion."). Courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion" and rely upon that material. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004). Such discretion generally is exercised when the proffered material is "likely to facilitate the disposition of the action." Id.

In its motion, defendant notes that plaintiff did not attach copies of the surety rider or the amended Guarantee Agreement as exhibits to the Complaint. Def.'s Mot. 2 n.1. Nevertheless, defendant argues that the court may consider those documents, which it attached as exhibits to its motion, see Def.'s Exs. 1-2, without converting its motion to dismiss into a motion for summary judgment: "[T]he Court's consideration of these documents does not convert the present motion into a motion for summary judgment because ACIC's complaint references the $240,000 contract price increase, as well as the alleged agreement with [the] SBA to increase the guarantee." Def.'s Mot. 2 n.1; see also Compl. ¶ 12 (alleging that the contract price was increased by $240,000.00 and that the SBA agreed in writing to an amendment of the Guarantee Agreement). In support of its position, defendant cites Mattes v. ABC Plastics, Inc., wherein the United States Court of Appeals for the Eighth Circuit determined that, notwithstanding the introduction of two exhibits into the record during the course of a hearing, the district court could still properly consider the motion as one to dismiss rather than for summary judgment because the two exhibits "may be viewed as attachments to [the] complaint, and as the contracts upon which [plaintiff's] claim rests, they are evidently embraced by the pleadings." 323 F.3d 695, 698 n.4 (8th Cir. 2003).

Defendant also relies upon Cortec Industries, Inc. v. Sum Holding LP, wherein the United States Court of Appeals for the Second Circuit ("Second Circuit") explained that "the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice . . . that they may be so considered[.]" 949 F.2d 42, 48 (2d Cir. 1991). Acknowledging the general rule that consideration of documents outside the complaint will ordinarily convert a motion into one for summary judgment, the Second Circuit also recognized that conversion is not necessary when a party not only "has actual notice of all the information in the movant's papers" but also "has relied upon these documents in framing the complaint . . . ." Id. Such is the case here. Indeed, plaintiff, in essence, admits the authenticity of the two exhibits accompanying defendant's motion, stating that defendant's first exhibit "is a copy of the Surety Rider submitted by ACIC in its Complaint"[10] and that the second exhibit "is a typed and dated Amended SBA

---

[10] Plaintiff contends that Exhibit 5 to its Complaint represents the surety rider. Pl.'s Resp. 10. Plaintiff's Exhibit 5 is a copy of the Guarantee Agreement submitted to the SBA on September 26, 2002, and approved by the SBA on September 27, 2002. Pl.'s Ex. 5. It contains handwritten modifications reflecting a subsequent increase in the contract amount by $240,000.00 and is marked "amended" at the top of the document. Id. Although these handwritten modifications accurately reflect the information contained in the typewritten surety rider, see Def.'s Ex. 1, plaintiff's Exhibit 5 is not a copy of the surety rider itself and does not indicate the dates upon which these modifications became effective or were approved by the

Guarantee Agreement for these Bonds, submitted by the SBA." Pl.'s Resp. 10. Thus, there is no dispute that defendant's two exhibits contain true and accurate information.[11] As further support, defendant cites subsection (c) of RCFC 10, which provides that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." RCFC 10(c).

In its response, plaintiff did not directly address defendant's argument that the court's reliance upon defendant's exhibits does not convert its motion into one for summary judgment. Rather, plaintiff expresses its view that the key issue for the court's determination is the question of intent as it relates to whether the bond was delivered. Pl.'s Resp. 16. In this regard, plaintiff argues that "the issue of delivery is a factual one subject to discovery or a motion for summary judgment." Id. Thus, plaintiff's response suggests that it agrees with defendant that the court's reliance upon defendant's exhibits does not convert defendant's motion into one for summary judgment. See id. In fact, plaintiff's response indicates that the question concerning the significance of the surety bond rider's delivery requires discovery and thus precludes the court from granting defendant's motion. Id. at 16-17.

The court finds that there are at least two bases to conclude that its reliance upon defendant's exhibits does not warrant conversion of defendant's motion to dismiss into a motion for summary judgment. First, the "court is not limited to the four corners of the complaint" when ruling upon an RCFC 12(b)(6) motion. 5B Wright & Miller, supra, at § 1357 (discussing FRCP 12(b)(6)). Rather, courts "have allowed consideration of matters incorporated by reference or integral to the claim . . . ." Id.; see also Mattes, 323 F.3d at 698 n.4 (permitting consideration of exhibits as attachments to a complaint where those attachments are "evidently embraced by the pleadings"); P.D. v. Mt. Vernon Cmty. Sch. Corp., No. 1:07-CV-1048-DFH-JMS, 2008 WL 1701877, at *1 (S.D. Ind. Apr. 10, 2008) ("Where a complaint refers to a document but does not incorporate it, a party may submit a copy of the document to support or oppose a motion to dismiss as long as the document is 'central' to the complaint."). Such is the situation in this case. The two exhibits are an integral part of plaintiff's claim because they reflect–and play a key role in completing–the transaction at issue in this case. By providing the effective date of the surety rider as well as the date upon which the SBA approved the amended Guarantee Agreement, the two exhibits clarify, rather than add anything new to, the allegations contained in the Complaint. See Song v. City of Elyria, Ohio, 985 F.2d 840, 842 (6th Cir. 1993) (rejecting the argument that materials were outside the pleadings on an FRCP 12(b)(6) motion where the documents "did

---

SBA.

[11] Plaintiff was a party to both documents as each contains the signature of its attorney-in-fact. Def.'s Exs. 1-2. Plaintiff acknowledges that "[a] power of attorney attached to a signed bond is proof of the authority of the signatory to bind the surety." Pl.'s Resp. 12. Therefore, there is no dispute that plaintiff had actual notice of the information contained in defendant's exhibits.

nothing more than verify the complaint" and "added nothing new, but, in effect, reiterated the contents of the complaint itself"). Indeed, knowing the precise sequence of events in this case is essential given that, in the court's view, the central legal issue presented is whether plaintiff complied with the pertinent regulation by obtaining prior written approval from the SBA before agreeing to an increase in the bond amount. Consequently, the two exhibits furnished by defendant, the surety rider and the amended Guarantee Agreement, are critical to the court's analysis. Although it is possible that plaintiff did not include these documents because they are not helpful to its case, their omission does not diminish the fact that both exhibits are "'central' to the complaint." P.D., 2008 WL 1701877, at *1.

Second, "there is a narrowly defined category of materials a court can consider without converting a 12(b)(6) motion to one for summary judgment. This category includes exhibits attached to the complaint, undisputed documents relied upon by the plaintiff, other items appearing in the record of the case, and matters of public record." Stuler v. United States, No. 07-642, 2008 WL 957009, at *2 (W.D. Pa. Apr. 8, 2008) (citation omitted) (emphasis added). The parties do not dispute the authenticity of the two exhibits appended to defendant's motion, see supra notes 10-11 and accompanying text, and the significance of these exhibits cannot be ignored. As discussed above, the Complaint could not be properly framed without reliance upon both the surety rider and the amended Guarantee Agreement, see Mattes, 323 F.3d at 698 n.4 (considering two exhibits offered at a hearing as "attachments to [the] complaint" because they contained contracts "upon which [the] claim rests"). Therefore, the court concludes that conversion of defendant's motion is not warranted and will now proceed to rule upon the merits of defendant's motion to dismiss.

## III. DISCUSSION

In its Complaint, plaintiff alleges that the SBA's refusal to pay under the Guarantee Agreement "is wrongful and constitutes a breach of that agreement." Compl. ¶ 21. Defendant argues that because plaintiff failed to obtain prior written approval from the SBA before acquiescing to an increase in the bond amount, plaintiff's breach of contract claim fails. Def.'s Mot. 4. According to defendant, without the SBA's prior written approval, no duty arose under the Guarantee Agreement. Id. Defendant's argument hinges upon application of, and plaintiff's failure to comply with, 13 C.F.R. § 115.19(e), which required plaintiff to seek and obtain prior written approval from the SBA prior to agreeing to an alteration of the bond.

The original Guarantee Agreement between plaintiff and the SBA, which the SBA approved on September 27, 2002, reflects that it is "subject to the regulations in 13 CFR 115." Pl.'s Ex. 1. The amended Guarantee Agreement between plaintiff and the SBA, which the SBA approved on June 2, 2004, contains the identical provision. Def.'s Ex. 2. The regulations referenced by and incorporated into the Guarantee Agreement "cover the SBA's Surety Bond Guarantee Programs under Part B of Title IV of the Small Business Investment Act of 1958, as amended." 13 C.F.R. § 115.1. The pertinent provision, section 115.19, expressly permits the SBA to deny liability: "In addition to equitable and legal defenses and remedies under contract

law, the Act and the regulations in this part, [the] SBA is not liable under a Prior Approval or PSB Agreement if any of the circumstances in paragraphs (a) through (h) of this section exist."[12] Id. § 115.19. One of the eight circumstances, a material alteration to the bond, is pertinent to the case sub judice and is set forth in paragraph (e):

> (e) *Alteration*. Without obtaining prior written approval from [the] SBA (which may be conditioned upon payment of additional fees), the Surety agrees to or acquiesces in any material alteration in the terms, conditions, or provisions of the bond, including but not limited to the following acts:
>
> > . . . .
> >
> > (2) In the case of a Prior Approval Surety, acquiescing in any alteration to the bond which would increase the bond amount by at least 25% or $50,000.

Id. § 115.19(e)(2).

**A. The Parties' Arguments**

Defendant argues that section 13 C.F.R. § 115.19(e)(2) precludes recovery in this case. Def.'s Mot. 1. Specifically, it maintains that "in any circumstance where ACIC agrees to a change of the amount of the bond in excess of at least 25 percent or $50,000 without the prior written approval of [the] SBA, [the] SBA has no liability to pay the guarantee." Id. at 5. According to defendant, the $240,000.00 increase to the bond constitutes a material alteration under section 115.19(e)(2) because the bond amount was increased by greater than $50,000.00. See id.; Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply") 3. Defendant argues that this alteration occurred on March 24, 2003, the effective date on the bond, Def.'s Mot. 5; Def.'s Reply 3, and that plaintiff did not seek prior written approval from the SBA before consenting to this change in the bond amount, Def.'s Reply 3. Moreover, defendant emphasizes that plaintiff "offers no evidence that the prior written approval [from the SBA] was received for the $240,000 change in the bond amount as of its effective date, March 24, 2003." Def.'s Mot. 5. Rather, according to defendant, "ACIC merely states [that the] 'SBA agreed in writing to an amendment of the Guaranty [sic] Contract to increase its guarantee from the original contract and bond amount.'" Id. (quoting Compl. ¶ 12) (alteration in original).

According to defendant, the March 24, 2003 date is critical because it represents the date upon which "the surety acknowledged that it received 'valuable consideration' and that it 'consent[ed]' to the change in the bond amount. Id. (quoting the surety rider attached as defendant's Exhibit 1). Rather than obtain prior written approval from the SBA, defendant

---

[12] The Guarantee Agreement at issue here is a Prior Approval Agreement. See supra note 3.

argues that plaintiff simply "did not inform [the] SBA that the bond had been effective since March 24, 2003." Id. at 2-3. Instead, defendant emphasizes, plaintiff "waited until May 19, 2004–more than one year after its effective date–to submit the amended Surety Bond Guarantee Agreement reflecting the additional $240,000 bond to [the] SBA for its approval." Id. at 2; see also Def.'s Reply 1 ("Instead of seeking approval as of March 24, 2003–the effective date of the increase–ACIC waited until more than one year later–May 19, 2004–to seek the SBA's approval."). Consequently, defendant asserts that the SBA properly denied plaintiff's claim based upon 13 C.F.R. § 115.19(e)(2) and that plaintiff's Complaint should be dismissed for failure to state a claim. Def.'s Mot. 5; Def.'s Reply 1, 3.

In response, plaintiff advances two arguments to defeat defendant's motion. The first is a public policy argument, while the second focuses upon the significance of the effective date of the bond. With respect to its policy argument, plaintiff asks that the court consider the purpose behind the SBA guarantee program, which it states is "to facilitate the entry of smaller and newer contractors into the construction marketplace."[13] Pl.'s Resp. 7. It maintains that this program "is intended to allow such smaller (and often newer) enterprises to obtain bonds so that they can compete with more established companies." Id. at 8. Surety companies, plaintiff states, "are encouraged to issue bonds to contractors who are somewhat more likely to default . . . by the SBA undertaking to bear much of the risk through an agreement to reimburse the surety for a substantial portion of its losses." Id. at 8-9. Consistent with this objective, plaintiff states that it "would not have issued the Bonds in question without the protection of the SBA guarantee." Id. at 9. Plaintiff nonetheless acknowledges that the "SBA's mission purpose of facilitating the entry of smaller and newer contractors into the marketplace is accomplished through regulations that include specified circumstances in which the SBA may deny liability on an existing guarantee." Id.

Concerning its second argument, plaintiff contends that defendant's position is merely "an artificially simplistic assessment" of its claim and disputes that a material alteration of the bond occurred. Id. at 7; see also id. at 10 ("The SBA claims that the 'clear meaning' of these documents is that ACIC 'materially altered the bond through increasing it by $240,000 without [the] SBA's approval.' On the contrary, the SBA is asking this Court to make assumptions not reflected in the Complaint, or the referenced exhibits.") Instead, plaintiff argues that the March 24, 2003 effective date contained in the surety rider, see Def.'s Ex. 1, does not indicate the date upon which the surety rider "actually took effect to increase the penal limit of the Bond," Pl.'s Resp. 10. According to plaintiff, the effective date "cannot be determined from the face of the Surety Rider," id., because it is "common practice in the industry of dating bonds to conform to bonded contracts, [with the result that] bonds may often show an 'effective date' that is earlier than the actual execution date for the bond," id. at 11 (citing Surety Bond Guarantee Final Rule,

[13] In its reply, defendant indicates that it "will not be responding" to the portion of plaintiff's response that describes "at length its view of the nature and purpose of [the] SBA's surety bond guarantee program" because plaintiff's discussion "is not argument and is largely unsupported by any authority . . . ." Def.'s Reply 1 n.1.

61 Fed. Reg. 3,266, 3,269 (Jan. 31, 1996));[14] see also id. at 1-2 (stating, in its question presented, that it is "common in the surety industry that the 'effective date' of a bond is often conformed to the date of the contract regardless of which the bond actually becomes enforceable"). Moreover, plaintiff argues that the effective date of March 24, 2003, "did not create any obligation upon ACIC until the bond was signed, with a power of attorney[,] **and also delivered**." Id. at 12-13; see also id. at 13-16 (citing both federal and state authority suggesting that a surety is not liable on a bond until the bond is both delivered to and accepted by an obligee); id. at 14 (asserting that its obligation to the obligee upon a principal's default begins from the date upon which the bond was accepted and delivered). Furthermore, plaintiff suggests that the effective date of March 24, 2003, is not relevant because parties "may indeed expressly agree to give a bond a retroactive effect." Id. at 15. In short, plaintiff argues that the surety rider "was ineffective until it was delivered to the obligee," id. at 17, and "there is no allegation in the Complaint or any exhibits or

---

[14] The Federal Register comments to the final rule adopting revised 13 C.F.R. § 115 that plaintiff references in its response do not relate to the alteration provision of 13 C.F.R. § 115.19(e). Instead, plaintiff relies upon comments relating to subsection (f), which concerns denial of liability by the SBA on account of timeliness. The comments applicable to subsection (f) state:

> The two comments received on this subsection expressed concern that the current industry practice of back-dating the bond at the request of the obligee could result in an SBA determination to deny liability under the guarantee. . . . [The] SBA does not object to a bond carrying an "effective date" (e.g., "dated as of July 1, 1996") that is earlier than its execution date (e.g., "signed July 20, 1996") as long as there is proper documentation of the actual date of execution of the bond and such execution date is no earlier than the date of [the] SBA's guarantee.

61 Fed. Reg. at 3,269. Defendant has not invoked subsection (f) as a basis for denying liability on the bond in this case. With regard to subsection (e), the provision at issue in this case, the comments discuss whether contract alterations, as well as bond alterations, serve as a basis for the SBA to deny liability:

> Under proposed § 115.19(e), [the] SBA would not be liable under its guarantee if the surety agreed to or acquiesced in any material alteration of the contract or bond without [the] SBA's prior written approval. This differs from the current regulation, § 115.13(e), which does not include alterations in the contract as a basis for [the] SBA to deny liability. The single comment received . . . pointed out that the standard bond form in the surety industry provides that the surety waives notice of changes to the contract. Changes to the contract frequently occur without any approval from the surety. Accordingly, [the] SBA has decided to remove contract alterations as a basis for denial of liability in the final rule."

Id. (emphasis added).

other documents upon which the Complaint was based that reflects that the Surety Rider was ever delivered to the Obligee,"[15] id. at 16. As such, plaintiff maintains that this issue of delivery "is a factual one subject to discovery or a motion for summary judgment." Id.

In its reply, defendant argues that plaintiff's reliance upon the SBA's 1996 comments in the Federal Register, see supra note 14, is "erroneous" and "reveals that ACIC's argument is nothing more than a red herring." Def.'s Reply 2. Defendant notes that the scenario described in the comments only indicates that "the 'effective date of the surety rider would bear the date of the contract, which in this case was September 13, 2002–not March 24, 2003." Id. As such, defendant maintains that "it is clear that the March 24, 2003 'effective date' has nothing to do with the date of the contract, and therefore ACIC's reliance upon [the] SBA's comments is misplaced and misleading." Id.

With respect to plaintiff's argument regarding delivery of the surety rider, defendant responds that delivery is ultimately "immaterial for a determination of a violation of section 115.19" and "irrelevant under the present circumstances." Id. at 3. Delivery to and acceptance by the obligee is irrelevant, according to defendant, because "ACIC acknowledged receiving consideration from the obligee in the Surety Rider" on March 24, 2003. Id. Therefore, defendant emphasizes, "the bond was obviously delivered and the obligee was aware of its existence" on or before March 24, 2003. Id. As such, defendant argues that the "only relevant consideration is whether and when ACIC 'agree[d] to or acquiesce[d] in any material alteration in the terms, conditions, or provisions of the bond.'" Id. (quoting 13 C.F.R. § 115.19(e)).

**B. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted**

Plaintiff frames the question before the court as "[w]hether the date typed onto a 'bond rider' . . . conclusively established the date of a 'material alteration in the terms . . . of the bond' for purposes of determining whether the plaintiff surety agreed to an alteration prior to obtaining SBA approval . . . ." Pl.'s Resp. 1. In the court's view, the relevant inquiry is whether plaintiff has presented sufficient evidence to state a claim, see Chapman Law Firm Co., 490 F.3d at 938, that defendant is liable on plaintiff's bond. In order to overcome defendant's motion, plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the

---

[15] Plaintiff suggests that, because the power of attorney attached to the surety rider "was executed on May 25, 2004, over a year past the stated 'effective date' on the Surety Rider," the surety rider "could not have been legally effective until, at the very least, May 25, 2004." Pl.'s Resp. 16. The court notes that the surety rider, as submitted by defendant in its Exhibit 1 and which states an "effective" date of March 24, 2003, contains the signature of plaintiff's attorney-in-fact. Def.'s Ex. 1. The surety rider does not contain any additional attachment. See id. Any other document purporting to contain a May 25, 2004 date was not submitted with the pleadings. Consequently, in the absence of supporting documentation, the court is uncertain of how plaintiff arrived at the May 25, 2004 date it suggests. Regardless, as discussed below, the May 25, 2004 date is not relevant to the court's resolution of defendant's motion.

assumption that all the allegations in the complaint are true . . . ." Twombly, 127 S. Ct. at 1965 (citation omitted). Although the court assumes well-pled factual allegations are true and indulges in all reasonable inferences in plaintiff's favor, United Pac. Ins. Co., 464 F.3d at 1327-28, it "will not accept conclusory allegations concerning the legal effect of the events that plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself," 5B Wright & Miller, supra, at § 1357.

The court is not persuaded that either the SBA comments to 13 C.F.R. § 115.19, see 61 Fed. Reg. at 3,269, or the question of delivery of the surety rider is relevant in this case. Rather, the question presented is whether defendant is liable on plaintiff's bond because plaintiff, in violation of the controlling regulation, failed to obtain the SBA's prior written approval before agreeing to a $240,000.00 increase in the bond amount. The undisputed facts show that the original Guarantee Agreement was approved by the SBA on September 27, 2002, reflecting a bond amount of $1,781,850.00. Pl.'s Ex. 1. On March 24, 2003, plaintiff agreed to a $240,000.00 increase in the bond amount, see Def.'s Ex. 1 (indicating an "approved changed order of $240,000.00" to be effective March 24, 2003), an amount that is $190,000.00 in excess of the $50,000.00 limit specifically enumerated in the pertinent regulation, see 13 C.F.R. § 115.19(e)(2). Indeed, the increase to which plaintiff agreed was nearly five times greater than the $50,000.00 limit provided in the regulation. Plaintiff did not submit a request to the SBA to approve the $240,000.00 increase until May 19, 2004. Def.'s Ex. 2 (indicating "5/19/04" as the date upon which the SBA received the amended Guarantee Agreement). The SBA approved the amended Guarantee Agreement reflecting the $240,000.00 increase in the bond amount on June 2, 2004. Id. Thus, the court will focus upon application of the controlling regulation's unambiguous requirement to the facts of this case in order to determine whether plaintiff has alleged facts suggesting that it sought and obtained written approval from the SBA to alter the bond amount prior to acquiescing to the $240,000.00 increase that became effective on March 24, 2003.

The facts, as alleged, clearly show that plaintiff has failed to do so. Although plaintiff disputes the significance of the effective date contained on the surety rider and argues that it is not liable on the bond until the bond is accepted and delivered, the issue of plaintiff's liability on the bond is not before the court. As to the relevant issue, whether defendant breached the amended Guarantee Agreement, plaintiff never alleges any date(s) upon which it sought, let alone received, written approval from the SBA for an alteration of the bond.[16] In fact, the date upon which the SBA provided written approval to an increase in the bond amount is conspicuously absent from plaintiff's Complaint, which merely alleges that the SBA "agreed in writing to an

[16] Plaintiff also does not explain why the $240,000.00 increase to the bond amount does not amount to an alteration under 13 C.F.R. § 115.19(e)(2). Pl.'s Resp. 10 (characterizing, without further discussion, defendant's argument that the $240,000.00 increase to the bond is an alteration as an "assumption[] not reflected in the Complaint, or the referenced exhibits"). But see id. at 3 (acknowledging that the penal limit of the bond was increased by $240,000.00).

amendment of the Guarantee Contract to increase its guarantee." Compl. ¶ 12. In support of this allegation, plaintiff offers Exhibit 5, which it claims represents a "true and correct copy of the Amended Guarantee Contract." Id. This characterization of plaintiff's Exhibit 5, however, is inaccurate, see supra note 10, and, in light of the amended Guarantee Agreement attached as defendant's Exhibit 2, is wholly misleading.

The amended Guarantee Agreement, which was completed on SBA Form 990, see supra note 4, and attached as defendant's Exhibit 2, reflects the information added to the original Guarantee Agreement, see Pl.'s Ex. 1, that formally memorializes the handwritten, "amended" version of the original Guarantee Agreement contained in plaintiff's Exhibit 5, see Pl.'s Ex. 5. Plaintiff's Exhibit 5, however, is simply a marked-up version of its Exhibit 1 and contains the same dates as the original Guarantee Agreement. Compare Pl.'s Ex. 1, with Pl.'s Ex. 5. Thus, plaintiff's allegation that its Exhibit 5 is a true and correct copy of the amended Guarantee Agreement suggests either that the SBA approved the amendment on the same date upon which it approved the original Guarantee Agreement or that the SBA's approval of the amended Guarantee Agreement relates back to the date upon which the original Guarantee Agreement was executed. These suggestions are simply untrue and are not supported by the pleadings. To the contrary, the surety rider sets forth in clear terms that the "approved changed order of $240,000.00" was "[t]o be effective March 24, 2003." Def.'s Ex. 1. Additionally, the amended Guarantee Agreement indicates the following: (1) plaintiff's attorney-in-fact signed the document on March 14, 2004; (2) the SBA received the document on May 19, 2004; and (3) the SBA approved the document on June 2, 2004. Def.'s Ex. 2. Significantly, plaintiff neither disputes that the SBA received the amended Guarantee Agreement on May 19, 2004, nor that the SBA approved the amended Guarantee Agreement on June 2, 2004. See Pl.'s Resp. 10.

Lastly, with respect to plaintiff's policy argument that, because sureties facilitate the entry of fledgling businesses into the marketplace and thereby promote economic stimulus, they are entitled to disregard federal regulations, see Pl.'s Resp. 7-9, plaintiff is mistaken. To be certain, plaintiff plays an important role in the marketplace. Nevertheless, no one, including entities that assist and promote business development, is entitled to ignore rules of compliance. The regulation is unambiguous: an increase in the bond amount in excess of 25 percent or $50,000.00 obligated plaintiff to obtain written approval from the SBA prior to its acquiescence to the bond's alteration. See id. at 10 (acknowledging that the surety rider attached as defendant's Exhibit 1 "states that the increase in the penal limit of the Bonds . . . is over 25% or $50,000"). Here, plaintiff acquiesced to a $240,000.00 increase in the bond amount without the prior written approval of the SBA and, consequently, failed to comply with the pertinent regulation. Now plaintiff must bear the consequences of its noncompliance.

In sum, plaintiff has failed to allege any facts suggesting that it submitted to the SBA a request for written approval before the bond was increased by an amount greater than $50,000.00. Furthermore, plaintiff has failed to allege any facts suggesting that the SBA provided written approval prior to the $240,000.00 increase in the bond amount. As such, plaintiff has not alleged any facts suggesting that defendant could not properly avail itself of the

defense set forth in 13 C.F.R. § 115.19(e)(2) in order to deny liability on the bond. Because plaintiff has failed to allege facts to meet or to overcome defendant's RCFC 12(b)(6) challenge, plaintiff has failed to state a claim upon which relief can be granted. Consequently, the court grants defendant's motion to dismiss pursuant to RCFC 12(b)(6).

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED**. The Clerk of the Court is directed to enter judgment dismissing plaintiff's Complaint with prejudice. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge